MARY K. WALTZ, Appellant, v. JOHN
E. WALTZ, Respondent.

No. 24141

July 7, 1994                                877 P.2d 501

Marshal S. Willick, Las Vegas, for Appellant.

Lynn R. Shoen, Las Vegas, for Respondent.

# OPINION

*Per Curiam:*

This is an appeal from an order of the district court terminating an award of alimony. For reasons stated below, we reverse the decision of the district court.

## FACTS

Appellant Mary K. Waltz ("Mary") and respondent John E. Waltz ("John") were married April 10, 1978, and divorced July 27, 1989. The divorce decree awarded John his entire military pension from his twenty years of military service. The decree also ordered John "to pay [Mary], by military allotment, the sum of $200.00 per month as permanent alimony, which amount he shall increase on a pro rata basis with each cost of living adjustment of his military retirement." Mary was married to John for

less than ten full years of his service and therefore could not make a direct division of the military pension (in which she had a community property interest) enforceable by means of direct collection from the military pay center.[1] The military pension appears to have been the couple's most valuable asset.

Mary was represented by Robert LePome ("LePome") in her divorce. John was initially represented by Michael Root ("Root") who filed an answer to Mary's complaint for John. The two counsel negotiated the property division of the divorce. Specifically, the two negotiated an agreement whereby Mary would receive $200.00 per month in lieu of her share of the military pension which would have totaled $217.00 per month. Mary's share was to be characterized as "permanent alimony" in the decree to ensure collectability should she remarry. Once this aspect of the property was settled, John terminated Root's services and represented himself in proper person during the remaining property discussions.

LePome testified that he met with John and went over all the terms of the property settlement including the trade of $17.00 per month for the permanent alimony award. He also testified that he and John went over the reasoning for this trade-off and that the alimony award was intended to be for the life of the parties. LePome also explained these terms to Mary. John, however, claimed that he had never agreed to anything but standard alimony.

John waived notice of hearing and the decree of divorce was entered on July 27, 1989. Mary remarried her first husband on October 14, 1989. Apparently, John called Mary's house on a number of occasions after the divorce, but claimed that he never knew she had remarried until the first hearing before a domestic relations referee in 1992. However, Mary's husband testified that he had intercepted John's calls to Mary in late 1989, and had told John to leave Mary alone because she was "[his] wife now."

Following the divorce, John failed to pay the required alimony. In 1991, two years after the decree, Mary retained her present counsel to bring a motion to reduce John's arrears to judgment. The referee recommended reducing John's arrears to judgment in the amount of $6,392.93 plus $400.00 in attorney's fees. Mary then initiated garnishment through the military pay center.

Thereafter, John retained his present counsel and filed a motion

[1] 10 U.S.C. 1408(d)(2) (1988) provides that the spouse of a member of the armed services may not obtain direct payment of retirement pay awarded as a division of property if that spouse was married to the member for less than ten years of service creditable in determining the member's eligibility for retired pay.

to hold Mary in contempt of court. The motion alleged that Mary had failed to pay back taxes as required by the decree and that Mary had not returned certain property. The motion also requested a reduction in alimony because John claimed he had been without legal counsel and was unaware of his rights when he agreed to the alimony.

Mary responded to this motion by providing a receipt showing that John had received his personal property and that her wages had been garnished to pay the back taxes. She also counter-claimed for further reduction of arrears to judgment.

The domestic relations referee who heard the case noted that Mary had a presumptive right to $217.00 per month of the military retirement pay, and that this right had been foregone in the final divorce decree. The referee held that the alimony provision in the decree was a pension provision and that John received the benefit of the bargain by the reduction of $17.00 per month. The referee concluded that the intent of the decree was to award Mary an irrevocable monthly entitlement to the military pension in the form of permanent alimony.

John filed an objection to the referee's recommendation. The district court judge held an evidentiary hearing after which he sustained John's objection. The court held that the decree provided for permanent alimony and was not ambiguous. Further, John, a nonlawyer representing himself, had relied on the clear and unambiguous language of the decree. However, pursuant to NRS 125.150(5), alimony must cease upon the payee spouse's remarriage. The court noted that if the parties' intention had been to provide for alimony to continue after remarriage, the decree could have been phrased to reflect such an intent. Since the decree was unambiguous, the court ordered that John was not liable for alimony after Mary's remarriage.

Mary appeals, arguing that the district court erred in holding that the alimony provision in the divorce decree was not a property settlement and therefore terminable upon her remarriage. We agree and reverse.

## DISCUSSION

Alimony is a creature of statute. As to the cessation of alimony upon remarriage of a payee spouse, NRS 125.150(5) provides:

> In the event of the death of either party or the subsequent remarriage of the spouse to whom *specified periodic payments* were to be made, all the payments required by the decree must cease, *unless it was otherwise ordered by the court.*

(Emphasis added.) It should be noted that this provision refers only to "alimony," not "permanent alimony." In the instant case, the divorce decree stated as follows:

> It is further ordered, adjudged and decreed that [John] is ordered to pay [Mary], by military allotment, the sum of $200.00 per month as *permanent* alimony, which amount he shall increase on a pro rata basis with each cost of living adjustment of his military retirement.

(Emphasis added.) This alimony provision specifically ties the amount to cost of living adjustments in John's military pension, as well as states that the payment is to be made by military allotment. Therefore, we conclude that this provision illustrates that this "alimony" is tied to Mary's community property interest in John's military pension. In addition, the use of the terms "permanent alimony" as opposed to simply "alimony," indicates that the parties' intent was to provide for payment on a permanent basis. The question is whether this language is sufficient to satisfy the "unless it was otherwise ordered by the court" language of NRS 125.150(5). Coupled with the testimony heard below concerning the intent of the parties, we conclude that it is.

The intent of the parties, based upon the testimony at the evidentiary hearing, appears to have been that this "permanent alimony" was in lieu of Mary's right to a part of John's military pay. Mary testified that she had discussed the provisions of the decree concerning alimony with John and LePome and that John had agreed to the exchange. LePome testified that he had negotiated the property terms with Root. In addition, LePome testified that he had explained to John that the permanent alimony provision in the decree meant that the alimony would continue until the death of either party. LePome also provided an affidavit which was admitted during the hearing. In the affidavit, LePome stated that "it was fully understood that the $200.00 per month 'alimony' was a substitute for $217.00 per month interest in community property and hence the word 'permanent alimony' was used and tied to [John's] cost-of-living adjustments of the military retirement."

John's testimony was contradictory in that he claimed that he had never agreed to such a provision. John testified that his understanding of the purpose of the provision was that it would make the alimony tax deductible to him. John also testified that the cost of living adjustment was meant "to match the cost of living for alimony, not military retirement." John never explained what he understood he received in exchange for Mary agreeing to $200.00 per month instead of $217.00. Finally, he admitted that

he had discussed military retirement with Root, but that the discussion was not "extensive."

Regardless of John's testimony, and in light of all the other evidence presented at the hearing, we cannot conclude that the divorce decree provided for terminable alimony. This court addressed a similar property settlement in Krick v. Krick, 76 Nev. 52, 348 P.2d 752 (1960). There, the divorce decree contained a provision for monthly payments to the wife as part of a property settlement. This court held that those payments were not alimony and thus did not cease upon her remarriage. *Id.* at 56, 348 P.2d at 754.

In the instant case, the divorce decree did not specifically refer to a property settlement. Nevertheless, we conclude that the district court erred in its construction of the decree. Although the decree does not clearly state that alimony was to be permanent and in lieu of Mary's claim to John's military pension, the majority of the testimony at trial indicated such a purpose. In *Krick*, we held that NRS 125.150(5) cannot be used as authority to order cessation of alimony payments when those payments were clearly a property settlement. *Krick*, 76 Nev. at 55-56, 348 P.2d at 754. Accordingly, based upon the testimony and evidence below, we hold that the district court erred in ordering that the decree provided for terminable alimony, and that pursuant to NRS 125.150(5), John was no longer required to pay alimony to Mary after her remarriage. Therefore, we reverse the decision of the district court.